UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CUMULUS BROADCASTING, LLC :
:
:
V. : CIV. NO. 3:10CV315 (JCH)
:
KRISTIN OKESSON :
:

RULING ON DEFENDANT'S MOTION TO STRIKE THE SUPPLEMENTAL EXPERT REPORT
OF JAY MEYERS AND SECOND MOTION TO COMPEL

Pending before the Court are Defendant Kristin Okesson's Motion to Strike the Supplemental Expert Report of Jay Meyers [doc. # 133] and Second Motion to Compel [doc. # 137] discovery from Plaintiff Cumulus Broadcasting, LLC. The Court heard argument on February 10, 2011 and after careful consideration rules as follows.

Motion to Strike [doc. # 133]

Defendant moves to strike the Plaintiff's supplemental expert report of Jay Meyers pursuant to Federal Rule of Civil Procedure 37(c)[1].

Pursuant to the Scheduling Order and subsequent extensions of time, Cumulus was to submit its expert report by October 31, 2010. Cumulus submitted its expert report, the Report of Jay Meyers, to Defendant on October 31, 2010. [doc. 133-1 at 3.] Mr. Meyers' report addressed the issue of the "impact of the sudden departure of a market

---

[1] To be clear, the Court expresses no opinion on the qualification or lack thereof of Plaintiff's expert Jay Meyers, which is the subject of Defendant's Motion in Limine [doc. # 140] and will be addressed at a later time.

1

manager for a similar position with a direct competitor". [doc. # 133-2.] On November 17, 2010, 17 days past the deadline for expert submissions, but prior to the taking of Mr. Meyers' deposition, Plaintiff provided Defendant with a Supplemental Report of Mr. Meyers, adding a broadcast cash flow analysis, otherwise known an estimation of lost profits.

Defendant argues that the Court should strike the supplemental report, because it was produced past the Court's scheduling order and it advances a new theory of damages that was not contained in the original expert report. Defendant argues that Rule 37(c) is self-executing and automatic, whereby preclusion of the report and statements therein is mandatory.

Rule 37(c) states, in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed.R.Civ.P. 37(c).

In the Second Circuit, preclusion under Rule 37(c) is not mandatory. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 297 (2d Cir. 2006) (district court erred in its determination that "preclusion is mandatory" under Rule 37(c)(1)). The Court "has wide discretion to impose sanctions ... under Fed.R.Civ.P. 37." Id. at 294 (2d Cir.2006).

Exercising its discretion, the Court will not strike Plaintiff's supplemental report. First, there is no evidence that the late disclosure, 17 days, prejudiced Defendant in any way. At the time of

the supplemental disclosure, Defendant had not yet deposed Plaintiff's expert or disclosed her own expert.[2] Further, no new documents or evidence was relied upon to support the opinions in the Supplemental Report. Second, there is no evidence of bad faith on Cumulus' part. While the Court is well aware that Cumulus' damages theory at the PJR was premised on a lost revenue analysis, there is no evidence that Cumulus' efforts to recast its damages theory was in bad faith. For instance, there is no indication that Cumulus withheld documents supporting this theory or knowingly misled Defendant.

In any event, the Court questions the application of Rule 37(c) sanctions to preclude the damages theory articulated in the supplemental report. The case of Hardy v. Town of Greenwich, 2008 WL 5117370, (D. Conn. Dec. 3, 2008) (Kravitz, J.) is instructive. In Hardy, plaintiffs failed to amend a contention interrogatory that asked plaintiffs to identify the legal theories they intended to pursue at trial. Defendant moved to preclude plaintiffs from relying on a newly disclosed legal theory, "constructive acquiescence", under Rule 37(c). The Court held,

> The Court has no doubt that Rule 26(e) required Plaintiffs to supplement or amend their answer to the Town's contention interrogatory. However, the Court is less sure that Rule 37(c)'s sanctions apply in this case. Typically, a Rule 37(c) motion asks the court to preclude a new witness or a new exhibit, not a new legal theory. See, e.g., Haas v. Delaware & Hudson Railway Co.,

---

[2] To the extent that Defendant believes it did not have ample time to prepare for Mr. Meyer's deposition because of the late supplemental disclosure, the Court will allow Defendant to reopen the deposition of Mr. Meyer limited to the statements or theories in the Supplemental Report.

3

282 Fed. App'x 84 (2d Cir. June 24, 2008); <u>Patterson v. Oneida County Sheriff's Dep't</u>, 440 F.3d 104 (2d Cir.2006); <u>Acas v. Conn. Dep't of Correction</u>, No. 06cv1855, 2008 WL 4479111 (D. Conn. Sept.29, 2008). Such situations comport with the language of Rule 37(c), which speaks in terms of "evidence" and allows a court to prohibit a party from using "that information or witness to supply evidence on a motion, at a hearing, or at a trial." A legal theory is not evidence. Moreover, here, the new legal theory depends solely on the evidence previously adduced during discovery-that is, Plaintiffs do not seek to add any new witnesses or any new evidence not previously disclosed to the Town. In those circumstances, the Court is not at all certain that Rule 37(c) should apply, particularly given the directive that the Federal Rules of Civil Procedure should be "construed and administered to secure the just ... determination of every action and proceeding." Fed.R.Civ.P. 1.

<u>Hardy</u>, 2008 WL 5117370, at *7.

Akin to <u>Hardy</u>, the purpose of Defendant's Motion is to preclude a theory, in this case of damages, not evidence or witnesses.[3] The lost profit analysis is based on evidence already exchanged by the parties, namely, profit and loss and revenue statements. Moreover, the theory is to be adduced from witnesses already disclosed.

The Court finds that, even if preclusion were appropriate under Rule 37, the sanction of preclusion is not warranted. As such, the Motion to Strike [doc. # 133] is DENIED.

---

[3] In her request for relief, Defendant states,"Plaintiff's latest attempt to redefine the entire theory behind its lawsuit should be rejected". [doc.# 133-1 at 11.]

4

Motion to Compel Discovery [doc. # 137]

Defendant moves to compel production of documents she claims are responsive and likely to lead to the discovery of admissible evidence. In her motion, Defendant sought an order to compel documents responsive to Defendant's Requests for Production Nos. 15, 16, 20, 21, 23, 24, 26, 36, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 55, 57, 59 and 60. The parties have reached agreement on request numbers 20, 21, 23 and 47. The Court will address the remaining requests.

Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

Defendant's Request for Production Nos. 15, 16, 20, 21, 23, 24, 26, 36, 38, 40, 41, 42, 43, 44, 45, 46, 47, 49, 55, 57, 59 and 60

Request No. 15 provides,

> From September 2008 to the present, a copy of each and every email sent to, from, and/or with a carbon copy ("cc") or blind carbon copy ("bcc") to Gary Pizzati, John Dickey, Lew Dickey, John Pinch, Ann McManus, Rick Malette, and/or Scott Summerlin which mentions Kristin Okesson in the "to", "from", "cc", "bcc" lines or describes her in the text whether by surname, initials, or description (e.g. the "market manager of Danbury").

Plaintiff objects to providing the requested documents for the time period after Ms. Okesson left Cumulus, on October 5, 2009, and the instant litigation ensued, stating that these are protected by the attorney-client privilege and work-product doctrine. Defendant argues that the October 5, 2009 cut-off is a problem, given that Cumulus' damages claim includes the period of October 5, 2009 through March 2010. To the extent documents exist that are not privileged and have not been produced, Plaintiff shall produce e-mails from October 5, 2009 through March 2010, to and from or cc'd to the individuals identified in the request, regarding the performance of the Danbury or Westchester markets after Ms. Okesson's departure. If none exist, Plaintiff shall attest to that fact.

Request No. 16 provides,

> From September 2009 to the present, a complete copy of each and every email sent to and/or received by Chuck Bortnick that refer(s) and/or relate(s) to Cumulus's Danbury and/or Westchester stations.

Request No. 26 provides,

> All weekly reports or written reports of any kind from the market or sales manager(s) of Danbury or Westchester or from Chuck Bortnick summarizing or analyzing sales performance as well as overall performance.

Plaintiff objects that the request is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Notwithstanding this objection, Plaintiff agrees to produce documents related to the hiring of Mr. Bortnick. Defendant insists she is entitled to communications regarding a "leadership void" or "loss of customers" attributable to Ms. Okesson's departure. To the extent, communications exist with Mr. Bortnick regarding the damage caused by Ms. Okesson's departure, these are relevant to the claims in this case and shall be produced. If none exist, Plaintiff will so indicate in its response.

Request No. 24 provides,

> All documents and communications concerning Cumulus's decision to terminate its Market Manager for its Westchester, NY cluster of stations and to replace him with Ms. Okesson.

Defendant seeks information regarding the circumstances of Mr. Calarko's[4] termination and documents regarding the decision to bring in Ms. Okesson. Defendant claims that such information is relevant, given that Cumulus seeks to attribute the loss of revenues in the

---

[4] Mr. Calarko was the Westchester market manager prior to Ms. Okesson.

Westechester market to her termination with no recognition that this was a troubled market under the leadership of Mr. Calarko. Plaintiff represents it has provided all documents regarding the decision to appoint Ms. Okesson to the Westchester position. Plaintiff's counsel shall inquire of his client whether there are documents from December 2008 to March 2009, regarding the circumstances of Mr. Calarko's termination. If responsive documents exist, they shall be produced. If documents surface that are sensitive in nature, they may be provided to the Court for in camera review prior to production.

Request No. 36 provides,

> Copies of all database(s) containing Cumulus's revenues, expenses, profits and losses for the Danbury, Bridgeport, Poughkeepsie and Westchester markets from October 1, 2008 to present in an electronic format that is capable of being used with Microsoft Excel or Access database.

Request No. 57 provides,

> Any analysis of profitability and/or profit and loss statement for each station in the Bridgeport and Poughkeepsie markets for the years 2007 to the present.

Defendant has narrowed her request and seeks to compel quarterly profit and loss statements for the Bridgeport and Poughkeepsie markets.[5] Defendant argues this information is necessary to test Plaintiff's theory that the loss of a market manager affects revenues. Plaintiff shall produce the quarterly profit and loss

---

[5] Plaintiff has produced responsive documents relative to the Danbury and Westchester markets.

statements for the Bridgeport and Poughkeepsie markets from January 2009 through March 2010. In all other respects, the requests are DENIED.

Request No. 38 provides,

> Any and all employment contract(s) and/or employment agreement(s) that were entered into by any of the individuals identified in Request No. 37 for the years 2008 to the present, including all drafts thereof.

Request No. 45 provides,

> All contracts of employment, as distinguished from confidentiality agreements, entered into between Cumulus and its market managers prior to October 5, 2009.

Request No. 46 provides,

> All contracts of employment entered between Cumulus and any female market manager.

Plaintiff objects that the employment contracts, to the extent others exists, are not relevant to the claims in the case and that these requests are precluded by this Court's prior ruling regarding production of other employment agreements. Defendant argues that the requests are relevant because she believes only female, not male, market managers were employed under contract. In light of Defendant's concern, Defendant may propound a request for admission to Plaintiff, whereon Plaintiff may admit or deny that at the time of Ms. Okesson's employment with Cumulus, only two females had employment agreements. In all other respects, the motion to compel answers to these requests

9

is DENIED.[6]

Request No. 40 provides,

> Documents sufficient to show the gross revenue per quarter for all Cumulus stations in the following markets for the years 2008 to the present:
> (a)  Oxnard and Santa Barbara, California;
> (b)  Fayetteville and Fort Smith, Arkansas;
> (c)  Cedar Rapids and Waterloo, Iowa;
> (d)  Amarillo and Abilene, Texas.

The markets identified in Request No. 40 are those where the manager, like Ms. Okesson, covered dual markets. Defendant argues that the documents sought are relevant to show that managers with dual markets bring in less revenue or profits than managers with single markets. Defendant limits her request to the period from 2009 through the present. Plaintiff shall produce quarterly revenue statements for the above markets for all of 2009 and the first quarter of 2010, the relevant damages period in this case.

Request No. 41 provides,

> Documents sufficient to show the salary, compensation, and bonus structure for Gail Furillo in her capacity as market manager for the Oxnard, California market.

Request No. 49 provides,

---

[6]As stated in the September 2009 ruling, "Okesson's employment agreement is to be interpreted pursuant to its own terms. Whether this language was or was not included in other employment contracts is not relevant on the current record and producing such contracts would pose an undue burden on Cumulus." [doc. # 78, at 11.]

10

> Any and all reports of sexual or gender discrimination.

Defendant concedes that Request # 49 is overbroad. Defendant has narrowed her request, seeking complaints of gender discrimination from January 2006 through the end of 2010 by all employees in the Northeast markets, or Atlanta headquarter and, outside those regions, reports or complaints of discrimination by persons holding the position of market manager or above. Defendant claims that this information is relevant to her hostile work environment claims. Plaintiff objects, arguing that Defendant's discrimination claim is narrow and targeted at Mr. Pizzati. Plaintiff's counsel represents to the Court that there are no complaints, at least formal complaints, against Mr. Pizzati, Lewis Dickey and John Pinch and that there is one complaint against John Dickey. Plaintiff shall produce copies of formal complaints against Mr. Pizzati, John Dickey, Lewis Dickey and John Pinch, from September 2008 through October 2010 by (1) any Cumulus employee in the Northeast region (Poughkeepsie, Danbury, Bridgeport and Westchester) and (2) any Cumulus market manager or employee above a market manager.

Request No. 42 provides,

> All documents related to the resignation of Gail Furillo from her position of market manager for the Oxnard, California market.

Request No. 43 provides,

> Any and all documents and communications authored by Gail
> Furillo concerning her efforts to depart from Cumulus's employ.

Request No. 44 provides,

> Any and all documents and communications that refer or relate
> to any complaints expressed by Gail Furillo concerning her
> treatment as an employee of Cumulus by her supervisors,
> including, but not limited to, John Pinch, John Dickey, Lew
> Dickey, Gary Pizzati and Richard Denning.

Defendant argues that at the time she was market manager for the Danbury and Westchester markets, there were only five or six female market managers around the country. One of the female market managers was Gail Furillo, in California, who purportedly left Cumulus at around the same time as Ms. Okesson. Defendant argues that Ms. Furillo's departure is suspicious. Defendant's proffered reason for requesting these documents is too speculative and not likely to lead to the discovery of admissible evidence. To the extent Ms. Furillo complained of gender discrimination during the relevant time period, this will be encompassed within Request No. 49.

Request No. 55 provides,

> All daily, weekly and/or monthly pacing reports generated by
> any Cumulus employee for the Danbury and Westchester markets
> for the years 2007 to the present.

Defendant argues that pacing reports track performance in the market and are relevant to the issue of the performance of the Danbury and Westchester markets. Plaintiff objects stating that Defendant's request is overly broad and burdensome. Plaintiff

represents that the pacing reports are not always solely pacing reports; the contents of a pacing report is may be woven into e-mails addressing other matters. Moreover, Plaintiff objects that the information is cumulative of loss, profit and revenue statements already produced. Defendant defends her request, arguing that she had to provide routine pacing reports pursuant to a company procedure and that the information is not cumulative in that the reports contain analysis of the performance of the markets. Plaintiff's counsel shall inquire of his client regarding the existence of formal pacing reports originating in the Danbury and Westchester markets from October 2009 through March 2010. To the extent any formal pacing reports exist for the relevant time period, they shall be produced.

Request No. 59 provides,

> For the years 2007 to the present, any and all documents that refer or relate to the competitive position, ratings, and/or ranking of Cumulus's stations within the Danbury or Westchester markets, including, but not limited to, B.I.A. reports, Nielson reports and/or Arbitron reports.

Request No. 60 provides,

> For the years 2007 to the present, any and all market revenue reports that refer or relate to Cumulus's stations within the Danbury or Westchester markets, including, but not limited to, reports generated by Miller Kaplan and/or Hungerford.

Defendant argues that the reports requested are proprietary in nature and that only Cumulus, if subscribed to these services, can

access them. Defendant argues that these reports track market performance and rank radio stations -which is then used to sell radio time. Defendant assures the Court that she is only looking for reports Cumulus has -in print or electronic format- as a result of subscribing to the particular service. To the extent Cumulus subscribes to any of the services enumerated by Defendant, it shall produce the market revenue reports or reports regarding the competitive position, ratings, and/or ranking of the Danbury and Westchester markets for the period from 2009 through March 2010.

Conclusion

For the reasons set forth herewith, Defendant's Motion to Strike the Supplemental Report of Jay Meyers [doc. # 133] is DENIED and Second Motion to Compel [doc. # 137] is GRANTED IN PART AND DENIED IN PART.

This is not a recommended ruling. This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 18th day of February 2011.

                                        /s/
                              HOLLY B. FITZSIMMONS
                               UNITED STATES MAGISTRATE JUDGE