UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CUMULUS BROADCASTING              :
                                  :
                                  :
V.                                :    CIV. NO. 3:10CV315 (JCH)
                                  :
KRISTIN OKESSON                   :

RULING ON PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS [doc. #197]

Pending before this Court is plaintiff's Motion for
Attorneys' Fees and Costs [doc. #197]. Plaintiff seeks an award
of $373,698 in attorneys' fees and $21,749.54 in costs, for a
total of $395,447.54 .  For the reasons that follow, the Court
awards plaintiff $ 80,317.04 in attorneys' fees and costs.


I.   BACKGROUND

In March 2010, plaintiff Cumulus Broadcasting brought this
case against defendant Kristin Okesson, a former employee,
seeking damages and to enforce certain provisions of the
Employment Agreement, including a non-compete clause. The Court
is familiar with the protracted history of this case, which
included a 2-day preliminary injunction evidentiary hearing, a
4-day prejudgment remedy hearing, numerous discovery motions,
cross-motions for summary judgment, and many efforts to settle.

Finally, in the fall of 2011, with the help of Parajudicial
Officer James Hawkins, the parties settled the case. The Court

1

is not privy to the terms of the settlement agreement. The only remaining issue is plaintiff's request attorneys' fees.[1]

Plaintiff moves for attorneys' fees and costs in the amount of $395,447.54 pursuant to a fee-shifting provision in the Employment Agreement. The bulk of plaintiff's fees were for the work performed by lead counsel Gary Klein[2]. Additionally, plaintiff seeks fees for tangential work performed by Attorneys Stephanie McLaughlin, Peter Nolin, Brian Daley, Katherine Thomas, and by the firm's paralegal or summer associates.

This motion is unique in two important respects. First, it is rare for attorneys' fees to be left for the Court to decide when a case is settled, perhaps because the task is more complicated when the Court does not know the terms of the settlement agreement, and which party, if either, prevailed at settlement in any substantive way.  Second, the plaintiff's greatest victory in this case appears to have been at the preliminary injunction stage, which can hardly be considered a home run. With these considerations in mind, the Court turns to the motion.

---

[1]  Judge Hall's September 7, 2011 Ruling re: Pending Motions and Scheduling Order provides that, "The Court understands that

[2] Plaintiff seeks fees for 1054.40 hours of billed time for the work performed by various lawyers.  Attorney Klein worked 837 hours and billed the client for 834 hours.

II.    <u>FEE SHIFTING PROVISION</u>

It is a well-established principle that "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." <u>Bristol Tech., Inc. v. Microsoft Corp.</u>, 127 F. Supp. 2d 64, 66 (D. Conn. 2000) (citations omitted). Connecticut follows the common law "American" rule in assessing the award of attorney's fees. Under the "American" rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." <u>Ames v. Comm'r of Motor Vehicles</u>, 267 Conn. 524, 532 (2004) (citation omitted). "A successful litigant is entitled to an award of attorney's fees if they are provided by contract." <u>Jones v. Ippoliti</u>, 52 Conn. App. 199, 209 (1999); <u>see</u> <u>also</u> <u>MP Drilling and Blasting, Inc. v. MLS Constr., LLC</u>, 93 Conn. App. 451, 457–58 (2006).

Under Connecticut law, it is "within the discretion of the court to determine whether the effort expended was reasonable under the circumstances and to rely on its familiarity and expertise with the complex legal issues involved to determine the reasonableness of the attorney's fees." <u>Retained Realty, Inc. v. Estate of Spitzer</u>, Civ No. 3:06cv0493 (JCH), 2007 WL 2221431, at *1 (D. Conn. July 26, 2007) (citing <u>Medvey v.</u>

Medvey, 98 Conn. App. 278, 286 (2006)).

Plaintiff seeks attorneys' fees pursuant to § 20 of the Employment Agreement.[3] Section 20 provides that,

> Employee covenants and agrees to pay all costs, expenses and/or charges, including reasonable attorneys' fees, incurred by the Company in enforcing any of the provisions thereof.

At the outset, defendant argues that plaintiff should not recover any fees under § 20, because the Employment Agreement, is voidable as a contract of adhesion.  The Court rejects this argument having, at the preliminary injunction and prejudgment remedy stage, decided that the parties entered into the Employment Agreement, and enforced certain provisions of the Employment Agreement. Furthermore, in the PJR ruling, the undersigned found that prior to signing the Employment Agreement, Ms. Okesson had the benefit of consulting with an attorney and actually requested that Cumulus make minor changes to the Employment Agreement. [doc. #156, Ruling on Cross Motions for PJR].

Alternatively, the defendant argues that if the Court permits recovery of attorneys' fees, § 20 should be narrowly construed, awarding only fees incurred in the successful

---

[3]  The Court rejects plaintiff's request for attorneys' fees pursuant to CUTSA. The plaintiff did not ultimately prevail on the merits of its CUTSA claim, having only satisfied the low probable cause standard at the PJR phase.

enforcement of the agreement, which defendant submits was only a portion of the injunction proceeding.

Section 20 does not explicitly provide that defendant is responsible for attorneys' fees incurred in the successful enforcement of the Employment Agreement. However, section 20 does provide that the attorneys' fees be "reasonable", allowing the court to base its award on factors other than the actual expense incurred by plaintiff.  In cases where there is a contractual provision allowing "reasonable attorney's fees," the Supreme Court of Connecticut requires that there be an evidentiary showing of reasonableness, with the award to be based on a number of considerations not limited to the actual fee incurred by the party. Crest Plumbing and Heating Co. v. DiLoreto, 12 Conn. App. 468, 480 (1987).

Instructive on the issue of reasonableness in light of the result achieved is the U.S. Supreme Court's finding that, "A plaintiff who achieves a transient victory at the threshold of an action can gain no award under that fee-shifting provision if, at the end of the litigation, her initial success is undone and she leaves the courthouse emptyhanded."  Sole v. Wyner, 552 U.S. 74, 78 (2007) (rejecting the plaintiff's request for attorney's fees, where a preliminary injunction had been granted but then the permanent injunctive relief had been denied).

Although <u>Sole</u> was a § 1983 case seeking fees under § 1988(b), which required the movant to qualify as a "prevailing party", the spirit of Justice Ginsburg's observation is not undercut merely because the fees are sought pursuant to a contractual fee-shifting provision.  Indeed, where a party does not "prevail" or is "marginally victorious", the reasonableness of attorney's fees becomes suspect.  See <u>Bowen Inv., Inc. v. Carneiro Donuts</u>, Inc., 490 F.3d 27 (1st Cir. 2007) (affirming denial of attorney's fees altogether pursuant to fee shifting provision in franchise agreement  that provided for the payment of reasonable attorneys' fees incurred in enforcing the agreement where plaintiffs were only "marginally victorious" in light of the small amount of damages awarded).

Having presided over the PJR hearing and numerous discovery disputes, the undersigned is well aware of the way this case was litigated and the varying degrees of success obtained by plaintiff and defendant. <u>Crest Plumbing</u>, 12 Conn. App. at 480, (1987) ("courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees."). The Court agrees with defendant that the plaintiff's greatest success in enforcing the Employment Agreement was at the preliminary injunction stage where plaintiff modestly prevailed. Among other

things, Judge Hall found that:

- Cumulus carried its burden that Ms. Okesson removed, disclosed and/or used certain confidential documents in violation of the Employment Agreement. [doc. #38, at 12-13].

- Cumulus carried its burden that Ms. Okesson solicited Rick Mallette for employment with Cox in violation of § 9 of the Employment Agreement. [doc. #38, at 20].

Consequently, plaintiff obtained an order which enjoined Okesson from using, disclosing, sharing, or transferring Cumulus confidential information for any purpose; contacting or soliciting Cumulus employees within the Danbury market; and required her to return a box of documents containing purported confidential information.  Notwithstanding the relief obtained, plaintiff lost two key claims. First, Judge Hall limited the geographic scope of the non-compete clause to the Danbury market. And, second, Judge Hall held that Cumulus did not carry its burden regarding its claim that Okesson violated the non-compete by soliciting customers within the Danbury market. [doc. #38, at 16-17]. Moreover, Judge Hall made clear that the entry of the preliminary injunction was appropriate where money damages could not compensate for plaintiff's harm.

Plaintiff did not heed Judge Hall's warnings regarding

proof of damages and pressed on with an application for a
prejudgment attachment, in the amount of $1,065,569.08.
Defendant made efforts to resolve the PJR motion, offering to
attach assets in the amount of $40,000, representing half of the
amount of attorneys' fees spent by plaintiff at that point.
[doc. #202-4, Letter[4] from Rooney to Klein dated Aug. 9, 2010].
The offer was rejected, and after four days of evidence, the
Court granted plaintiff's PJR in the amount of $2,559.05,
representing 0.2% of the damages sought, hardly a victory.

    After the PJR hearing, a slew of rancorous discovery
motions well beyond the scope of the goal of enforcing the
Employment Agreement flooded the docket. The dispositive motions
were never ruled on, as the case settled prior to their
determination. In light of this history, the Court finds that
"reasonable attorney's fees" for the "enforcement" of the
Employment Agreement are limited to the fees incurred through
the preliminary injunction hearing, where plaintiff was
partially successful in enforcing a number of provisions of the

---

    [4] Attorney Rooney wrote to Attorney Klein stating in part, "I
thought this case was over, as are most cases of this type, with
the preliminary injunction ruling. We got a clear interpretation
from the Court of how the agreement is to be read and a Ruling
on whether there were violations of any provisions to date. [. .
.] I am thus concerned about the recent filings your client has
made, as these documents seem to be intent on keeping a case
that should have concluded alive despite the fact that there are
no real damages." [doc. #202-4].

contract. With this limitation in the mind, the Court turns to the calculation of attorneys' fees.

III.   <u>DISCUSSION</u>

Under Connecticut law, "the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.... The courts may then adjust this lodestar calculation by other factors." <u>Land Group, Inc. v. Palmieri</u>, 123 Conn. App. 84, 98 (2010) (citation omitted). This is consistent with caselaw from the circuit and Supreme Court, which "have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" <u>Millea v. Metro-North R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011) (citing <u>Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008); <u>see also</u> <u>Perdue</u>[5] v. Kenny A. ex rel. Winn, --- U.S. ---, 130 S.Ct. 1662, 1673 (2010)). The lodestar method of calculating fees, while not conclusive, is presumptively reasonable absent extraordinary circumstances.  <u>Millea</u>, 658 F.3d at 166; <u>Perdue</u>, 130 S.Ct. at

---

[5] As recently noted by the Connecticut Appellate Court, the <u>Johnson</u> test has fallen out of favor, having been rejected by the Supreme Court in <u>Perdue</u>, 130 S.Ct. at 1672. <u>Electrical Wholesalers, Inc. v. V.P. Elect., Inc.</u>, 132 Conn. App. 832, 849 (2012) (affirming trial court's attorney's fees award where court failed to utilize the <u>Johnson</u> test).

1674.

    1.   <u>Reasonable Hourly Rate</u>

    Defendant does not object to the hourly rates plaintiff requests. As such, the Court sets the hourly rates as requested and set forth in **Table 1**, <u>infra</u>.

    2.   <u>Reasonable Hours</u>

    The Court has meticulously scrutinized the time records submitted to ensure that the time was "usefully and reasonably expended," see <u>Lunday v. City of Albany</u>, 42 F.3d 131, 134 (2d Cir. 1994), and to eliminate hours that appear excessive, redundant, or otherwise unnecessary. See <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998). As stated above, pursuant to the language of the Employment Agreement and the results obtained by the plaintiff in this litigation in enforcing the Employment Agreement, the Court will only award fees incurred in the prosecution of the preliminary injunction, including discovery for purposes of the preliminary injunction.

    A review of the billing records reveals that about 175.4[6] hours were spent by Attorney Klein from the moment the potential litigation arose in November of 2009 through the conclusion of the Preliminary Injunction hearing on April 8, 2010. From those 175.4 hours, 30 hours are deducted for vagueness or

------

[6] 172.9 hours were billed at $400 and 2.5 hours were billed at $375.

excessiveness.

With regard to vagueness, "[f]ees should not be awarded for time entries when the corresponding description of work performed is 'vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended.'" Connecticut Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 690 (D. Conn. 1994) (citing Grogg v. General Motors Corp., 612 F. Supp. 1375, 1380 (S.D.N.Y. 1985)). Entries stating such vague references as "review of file", "review of correspondence", "research", "conference with client", and "preparation of brief" do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter. Mr. and Mrs. B. v. Weston Bd. of Ed., 34 F. Supp. 2d 777, 781 (D. Conn. 1999) (citing Connecticut Hospital Ass'n v. O'Neill, 891 F. Supp. 687, 691 (D. Conn. 1994); Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510 (S.D.N.Y. 1994); Orshan v. Macchiarola, 629 F. Supp. 1014 (E.D.N.Y. 1986)). Here, the Court takes issue with entries such as, "review e-mails and analysis", "e-mails with opposing counsel", "client calls", "calls with client". Although the Court has no reason to doubt that this work was done, without more detail the Court cannot fairly evaluate the reasonableness of the services and hours expended and whether the work was

11

related to the preliminary injunction.

As for excessiveness, the Court will reduce the time spent in preparation for the preliminary injunction. This is especially appropriate in light of the relative success obtained at the preliminary injunction hearing. In total, the Court reduces Attorney Klein's time through April 9, 2010 by 30 hours.

The Court awards the 0.4 hours requested for work done by Attorney Nolin early in the case and 3 hours for work done by paralegals before the preliminary injunction hearing. Fees for the remaining lawyers, Thomas, Daley and McLaughlin, are denied.

3.   Presumptively Reasonable Fee

For each attorney, the Court has multiplied the reasonable hourly rates by the reasonable amount of hours as determined by the Court. Table 1 summarizes the presumptively reasonable fee.

**Table 1, Presumptively Reasonable Fee**

| Attorney | Hourly Rate | Hours | Fees |
|---|---|---|---|
| Gary Klein | $ 375.00 | 2.5 | $ 937.50 |
| Gary Klein | $ 400.00 | 142.9 | $ 57,160.00 |
| Peter Nolin | $ 425.00 | 0.4 | $ 170.00 |
| Paralegal/Summer Associate | $ 100.00 | 3 | $ 300.00 |
| | | **Total** | $ 58,567.50 |

4.   Costs

Plaintiff seeks a total of $21,749.54 in costs incurred

12

through, among other thing, travel, mileage fees, marshal fees, messenger fees, photocopies, federal express, transcripts, westlaw online research and conference calls. Defendant does not object to the costs. As such, plaintiff is awarded costs in the amount of $21,749.54

Having limited the fees from the outset to those incurred in the prosecution of the preliminary injunction, the Court finds no further across-the-board reduction is necessary, Therefore, the Court awards plaintiff costs and fees in the amount of $80,317.04, as set forth in Table 2.

**Table 2, Total Costs and Fees Awarded**

| | | |
|---|---|---|
| Total Fees | $ | 58,567.50 |
| Total Costs | $ | 21,749.54 |
| **Total Costs and Fees** | $ | 80,317.04 |

IV.   <u>CONCLUSION</u>

For the reasons stated, plaintiff's Motion for Attorneys' Fees and Costs [doc. #197] is **GRANTED** in part in the amount of $80,317.04.

This is not a recommended ruling.  This is an attorneys' fees order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified

by the district judge upon motion timely made. However, in light of the parties' agreement that the attorneys' fees would be set by either Judge Hall or Judge Fitzsimmons, and that the decision would be final, not subject to appeal, this ruling disposes of the last issue in the case.

SO ORDERED at Bridgeport this 4th day of September 2012.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE